United States District Court
Southern District of Texas
**ENTERED**
July 09, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| LEROY JOSEPH GILBERT PUNCH, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. 6:24-CV-00003 |
| | § | |
| VICTORIA COUNTY JAIL, | § | |
| | § | |
| Defendant. | § | |
| | § | |
| | § | |

**MEMORANDUM AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Leroy Joseph Gilbert Punch, a Texas pretrial detainee appearing *pro se* and *in forma pauperis*, has filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. (Doc. No. 9 (amended complaint).) Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997(e)(c); 28 U.S.C. § 1915A. For the reasons discussed below, the undersigned recommends that the district court DISMISS Plaintiff's claims without prejudice.

### A. Jurisdiction.

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

### B. Background.

#### 1. The instant action.

Plaintiff is a pretrial detainee, with pending criminal charges in Victoria County, Texas. Plaintiff was declared incompetent to stand trial in his criminal case and was committed to the

North Texas State Hospital; he has since been transferred to the San Antonio State Hospital. (Doc. No. 19, p. 1 ¶ 3; Doc. No. 21, p. 1.)[1] Plaintiff is suing an officer of the Victoria County Jail, along with three other jail employees. (Doc. No. 9, p. 3; Doc. No. 19, p. 7 ¶ 34.)[2]

In his amended complaint, Plaintiff alleges that Sergeant Christopher Wright denied him medical care after Plaintiff was allegedly attacked in the jail by another inmate. This denial, Plaintiff says, was in retaliation for Plaintiff's filing of a previous federal civil rights lawsuit and a federal habeas corpus petition. (Doc. No. 9, p. 4.)

To better understand Plaintiff's claims, the Court ordered Plaintiff to answer a questionnaire, and Plaintiff subsequently provided his response, followed later by a supplement. (Doc. Nos. 15, 19, 20.) Plaintiff has also provided the Court with some of his medical records. (Doc. No. 13.) He has additionally provided a handwritten recap of grievances that he has filed and the responses he has received (ostensibly a sort of "transcript" of those grievances and the responses). (Doc. No. 10-2.) The undersigned accepts the factual allegations in Plaintiff's amended complaint, response to the Court's questionnaire, medical records, and grievances as true for the purposes of this screening. Plaintiff's questionnaire response, medical records, and grievances are deemed to be part of his complaint in this case.

### 2. *Plaintiff's factual allegations.*

Plaintiff claims that he was attacked by another inmate in the Victoria County Jail on the evening of Saturday, October 7, 2023. (Doc. No. 19, p. 1 ¶¶ 5, 6.) Plaintiff states that he does

---

[1] The effect of Plaintiff's incompetency finding is discussed further below.

[2] Plaintiff lists the Victoria County Jail itself as a defendant. (Doc. No. 9, p. 1.) In response to the Court's questionnaire, Plaintiff clarifies that he brings no claim against the jail. (Doc. No. 19, p. 6 ¶¶ 31, 33.) The undersigned therefore recommends that the district court DISMISS Plaintiff's claim, such as it is, against the Victoria County Jail.

not know what caused the attack; he alleges that he was "singled out by this inmate. I did nothing to provoke him." *Id.* at 2 ¶ 9. Plaintiff states that he was hit on the side of the head, that he fell to the ground on his left side, and that he was hit while he was on the ground. *Id.* ¶ 11. The other inmate allegedly grabbed Plaintiff's dreadlocks while Plaintiff was on the ground, pulled Plaintiff up by them, and then slammed Plaintiff to the ground on his left side. *Id.* Plaintiff states that another inmate stopped the attack by telling the attacking inmate to "let [Plaintiff] up." *Id.* ¶ 12. Plaintiff states that the attack left him "partially lame" in his left arm. (Doc. No. 9, p. 4.) Asked to state the specific injuries he sustained, Plaintiff states: "At the moment the only diagnosis is left shoulder pain weakness and limited range of motion. I'm still experiencing pain." (Doc. No. 19, p. 2 ¶ 13.)

Plaintiff states that he did not feel any pain from the 9:00 p.m. attack until about two o'clock the following morning, October 8 (Sunday morning). (Doc. No. 19, pp. 2-3 ¶ 14.) He states that he reported his injury to an Officer McClain at 6:00 a.m., and that Officer McClain then relayed the report to Sergeant Wright, who was allegedly the jail's shift supervisor at that time. *Id.* at 3 ¶ 14; *see also* Doc. No. 9, p. 3. Plaintiff states that he told Officer McClain that he had "a possibly broken backbone and dislocated shoulder." (Doc. No. 19, p. 3 ¶ 19.) According to Plaintiff, Sergeant Wright responded (through Officer McClain) that "he'd informed the medical department and someone from medical ("The Doctor") would be arriving later that day" and that "The Doctor will be arriving today to assess your injuries." *Id.* ¶¶ 17, 20; *see also id.* at 4 ¶ 22.

Plaintiff claims that no doctor ever came to see him on that Sunday, however, because "the doctor will not arrive on the weekend." (Doc. No. 19, p. 4 ¶ 20.) Plaintiff claims that Sergeant Wright therefore should have "given the order to have me taken to the hospital." *Id.*

Sergeant Wright refused to order Plaintiff's transfer to a hospital, Plaintiff claims, because Plaintiff had previously filed a federal civil rights lawsuit against multiple jail officials (although not against Sergeant Wright)[3] and a federal habeas action challenging, among other things, a March 2023 disciplinary action allegedly initiated by Sergeant Wright.[4]  (Doc. No. 9, p. 4; Doc. No. 19, p. 6 ¶ 30; Doc. No. 20.)  According to Plaintiff, the Victoria County Sheriff "had to retain counsel to challenge the habeas corpus" stemming from the disciplinary action imposed by Sergeant Wright.  (Doc. No. 19, p. 6 ¶ 30.)  And although Sergeant Wright was not a defendant in the civil rights case, Plaintiff alleges that he "was well informed about the lawsuit."  *Id.*

Plaintiff states that he submitted requests for medical treatment via the jail's kiosk system on October 8 and 9 (Sunday and Monday), as well as other subsequent dates, stating that he "may have a dislocated shoulder and broken/fractured back bone."  *Id.* ¶¶ 23(a), 23(c), 23(d).  Sometime in October,[5] Plaintiff received an x-ray at the jail, performed by an "outside x-ray tech."  *Id.* at 5 ¶¶ 28(b), 28(c).  He states that he was refused access to the results.  *Id.* ¶ 28(e).  Although he apparently requested one, Plaintiff was not given an MRI examination for his alleged injuries.  He states that the jail told him on November 23, via the kiosk system: "During the visit in which the x-ray was ordered you informed us that your shoulder injury happened before you were detained in the Victoria County Jail.  Unfortunately [the Victoria County Sheriff's Office] will not approve MRIs for injuries obtained outside of our jail."  *Id.* ¶ 25.

---

[3] The civil rights case was *Punch v. Victoria Cnty. Jail Med. Dep't*, No. 6:22-cv-00022 (S.D. Tex.)  That case was dismissed without prejudice at the screening stage.  *See id.*, Doc. Nos. 25, 28, 29.

[4] The habeas action was *Punch v. Marr*, No. 6:23-cv-00012 (S.D. Tex.).  The habeas action was severed from Plaintiff's civil rights case and was eventually dismissed without prejudice on exhaustion grounds.  *See id.*, Doc. Nos. 1, 3, 26, 27, 28.

[5] Plaintiff does not recall the exact date of the x-ray.  (Doc. No. 9, p. 5 ¶ 28(c).)

Plaintiff was given a shoulder sling and Tylenol, and alleges that this was the extent of his treatment for the three months he remained at the jail before his transfer to the state hospital. *Id.* ¶ 26.

At the time of his transfer to the North Texas State Hospital, Victoria County jail officials "passed on" a diagnosis of "left shoulder pain." (Doc. No. 19, p. 5 ¶ 27.) Plaintiff alleges that he has received a shoulder x-ray and physical therapy for his shoulder, provided by an outside hospital. *Id.* ¶¶ 26, 27. He does not claim to have received an MRI examination since his transfer.

### 3. *Plaintiff's legal claims and requested relief.*

Plaintiff sues Sergeant Wright in his individual capacity for failing to send him to an outside hospital on Sunday, October 8. This failure, Plaintiff claims, was Sergeant Wright's retaliation for Plaintiff's filing of the civil rights lawsuit and the habeas corpus action. (Doc. No. 9, p. 4.) As explained in his response to the Court's questionnaire, Plaintiff also sues three other jail staff members in their individual capacities for refusing him medical treatment. Nurse Cox and Nurse McBride allegedly spread information that Plaintiff's injury was pre-existing, and Doctor Decloy refused to see Plaintiff to assess his injury. (Doc. No. 19, pp. 6-7, ¶¶ 33-34.)[6]

Liberally construed, Plaintiff lodges the following specific claims in his § 1983 complaint:

- Sergeant Wright exhibited deliberate indifference to Plaintiff's serious medical needs when he failed to send Plaintiff to an outside hospital for medical evaluation on Sunday, October 8, 2023;

---

[6] By separate order, the undersigned is directing the Clerk to add Nurse Cox, Nurse McBride, and Dr. Decloy as defendants in this case.

- Sergeant Wright retaliated against Plaintiff for exercising his First Amendment rights by failing to send Plaintiff to an outside hospital for medical evaluation on Sunday, October 8, 2023 after Plaintiff had filed a federal civil rights lawsuit and a federal habeas action;
- Nurse Cox and Nurse McBride wrongly denied medical treatment to Plaintiff by "spreading information that [his shoulder] injury was pre-existing," in violation of Plaintiff's Fourteenth Amendment rights; and
- Dr. Decloy wrongly denied medical treatment to Plaintiff by refusing to see Plaintiff to assess his alleged injuries on Sunday, October 8, 2023, in violation of Plaintiff's Fourteenth Amendment rights.

Plaintiff requests monetary relief: $75 million in damages. (Doc. No. 9, p. 4; Doc. No. 19, p. 7 ¶ 35.)

### C. Legal standards.

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A; *see also* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing

the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim." *Id.* Therefore, the Court "should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of his legal conclusions that give rise to a reasonable inference that the defendants are liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

Pleadings filed by *pro se* litigants like Plaintiff are construed using a less stringent standard of review. Documents filed by *pro se* litigants are to be liberally construed, and *pro se* complaints, however inartfully drafted they might be, are held to less stringent standards than formal pleadings drafted by lawyers. *See Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A plaintiff's well-pleaded factual allegations in the complaint are to be taken as true for purposes of screening, but such deference does not extend to conclusory allegations,

unwarranted factual inferences, or legal conclusions.  *DeMarco v. Davis*, 914 F.3d 383, 386-87 (5th Cir. 2019).

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law.  *Nelson v. Campbell*, 541 U.S. 637, 643 (2004); *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States.  42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).  A defendant acts under color of state law if he or she misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties.  *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

### D. Discussion.

#### 1. *Plaintiff's claims against Sergeant Wright should be dismissed.*

##### a. *Failure to send to hospital.*

Liberally construed, Plaintiff alleges that Sergeant Wright violated his Fourteenth Amendment rights as a pretrial detainee by failing to send him to an off-site hospital for evaluation of his alleged injuries on Sunday, October 8.  *See* Doc. No. 9, p. 4; Doc. No. 19, p. 6 ¶ 29.  Sergeant Wright allegedly denied this medical care as retaliation for Plaintiff's previous filing of two federal actions.  *See* Doc. No. 9, p. 4.  Plaintiff's claims should be dismissed.

Plaintiff's allegations reflect that he made Sergeant Wright aware of the alleged attack and his alleged injuries on the morning of Sunday, October 8, through Officer McClain.  (Doc. No. 19, p. 3 ¶ 17.)  According to Plaintiff, Sergeant Wright responded that the medical provider would be arriving later that day to examine Plaintiff and assess his alleged injuries.  *Id.*; *see also id.* ¶ 20.  Plaintiff claims that no provider came to see him that day, because "the doctor will not

arrive on the weekend." *Id.* at 4 ¶ 20. According to Plaintiff, Sergeant Wright "should've given the order to have me taken to the hospital." *Id.* Plaintiff does not allege that he never received treatment – only that treatment was delayed by at least 24 hours because Sergeant Wright did not order that Plaintiff be sent to the hospital on that Sunday.

The Fourteenth Amendment prohibits deliberate indifference to a pretrial detainee's medical needs. *See Ford v. Anderson Cnty., Tex.*, 90 F.4th 736, 752 n.5 (5th Cir. 2024). A constitutional violation exists where an officer subjectively knows of a substantial risk of serious harm to the detainee and responds to that risk with deliberate indifference. *Id.* (citing *Cope v. Cogdill*, 3 F.4th 198, 206-07 (5th Cir. 2021)). "Actions and decisions by officials that are merely inept, erroneous, ineffective or negligent" do not constitute deliberate indifference. *See Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998). To obtain relief from a jail official (like Sergeant Wright) based on that official's deliberate indifference to a medical need, Plaintiff must plausibly allege that "the official intentionally delayed or denied access to medical care or intentionally interfered with the treatment once prescribed." *Rodriguez v. Putnam*, Civ. No. H-23-4026, 2024 WL 2159970, at *9 (S.D. Tex. May 14, 2024) (Rosenthal, J.). Delay in receiving medical care is not, by itself, a constitutional violation. *See Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (per curiam); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). A plaintiff must show, at a minimum, that deliberate indifference to his serious medical needs has resulted in substantial harm. *See Rogers v. Boatright*, 709 F.3d 403, 410 (5th Cir. 2013); *Easter*, 467 F.3d at 464.

Deliberate indifference is an extremely high standard to meet. *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001). "A detainee can establish a jail official's deliberate indifference by showing that the official refused to treat him, ignored his complaints,

intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Ford*, 90 F.4th at 752 (cleaned up). Deliberate indifference can also be shown where a jail official knows that a detainee faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Id.* (citing *Farmer v. Brennan*, 511 U.S. 825, 827 (1994)).

Here, Plaintiff alleges that he needed medical care and that Sergeant Wright delayed it by failing to order that Plaintiff be taken to an off-site hospital on that particular Sunday because medical providers would not be present at the jail on the weekend. Plaintiff does not allege that he never received medical care at all, or that he did not receive it the following day (a Monday) or within the few subsequent days. He likewise fails to plausibly allege that Sergeant Wright knew that Plaintiff faced a substantial risk of serious bodily harm and then disregarded that risk by failing to take measures to abate it. *See Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). Plaintiff also fails to plausibly allege that he actually suffered substantial harm, or indeed any aggravation of his alleged injury, by virtue of any delay in receiving care. *See Rogers*, 709 F.3d at 410; *Easter*, 467 F.3d at 464. Because Plaintiff's allegation regarding delay in medical care does not state a viable claim for deliberate indifference against Sergeant Wright, the district court should dismiss it.

### b. *Retaliation.*

To the extent Plaintiff's allegations could be construed as a standalone claim for retaliation, he likewise fails to state a viable claim. "An action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate." *Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995). The purpose of allowing retaliation claims under § 1983 is to protect against retaliatory

actions that may chill an individual's exercise of constitutional rights. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). However, "[r]etaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Morris v. Powell*, 449 F.3d 682, 685 (5th Cir. 2006).

The Fifth Circuit has recognized that the "prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties." *Woods*, 60 F.3d at 1166. Claims of retaliation "must therefore be viewed with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Id.* Thus, prisoners' claims of retaliation are "carefully scrutinized by the courts." *Toson v. Freeman*, No. 1:22-cv-00085, 2023 WL 4998063, at *5 (N.D. Tex. July 24, 2023) (quoting *Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010)).

To state a claim for retaliation, a prisoner must allege "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation," a showing that but for the retaliatory motive, the complained-of action would not have occurred. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). "The inmate must produce direct evidence of motivation, or the more probable scenario, allege a chronology of events from which retaliation may be plausibly inferred." *Woods*, 60 F.3d at 1166 (cleaned up).

Here, Plaintiff's allegation falls short on at least the second and fourth prongs. The Court's questionnaire ordered Plaintiff to state his direct evidence that Sergeant Wright intended to retaliate against Plaintiff for filing his civil rights action and the habeas case. (Doc. No. 15, p. 5 ¶ 30.) Plaintiff responded:

> My direct evidence is the disciplinary infraction that Sgt Wright wrote on 03/08/2023. This disciplinary infraction was one of the grounding points of the habeas corpus. Sheriff Marr had to retain counsel to challenge the habeas corpus. Sgt Wright was well informed about the lawsuit and habeas corpus.

(Doc. No. 19, p. 6 ¶ 30; *see also* Doc. No. 20 (disciplinary write-up).)

Plaintiff's "direct evidence" is a mere conclusory statement of belief that he is a victim of retaliation. Mere knowledge of prior protected activity (granting Plaintiff the assumption that the filing of the two prior actions constituted protected activity) does not give rise to a retaliatory intent, nor does it serve as direct evidence of such intent. "Conclusory allegations, including a prisoner's belief that he is the victim of retaliation, are insufficient to support a claim for retaliation." *Epley v. Lopez*, No. 1:18-CV-00115, 2023 WL 2483502, at *14 (N.D. Tex. Feb. 27, 2023), *adopted*, 2023 WL 2481607 (N.D. Tex. Mar. 13, 2023); *see also Jones*, 188 F.3d at 325. Plaintiff states that the Victoria County sheriff retained counsel in order to defend against Plaintiff's habeas action, *see* Doc. No. 19, p. 6 ¶ 30, but retention of counsel to defend an action cannot be plausibly stretched to equate to the existence of retaliatory intent, especially where the alleged retaliator (here, Sergeant Wright) was not himself forced to retain counsel.[7]

Additionally, Plaintiff makes no plausible allegation of causation. As applied here, Plaintiff would be required to plausibly allege that Sergeant Wright would have ordered that Plaintiff be transported to an off-site hospital had Plaintiff not filed his previous two federal actions. Plaintiff alleges nothing more than that Sergeant Wright was aware of the prior federal actions, and he does not allege that he would have been taken to the hospital had he not filed those actions. The district court should therefore dismiss Plaintiff's retaliation claim.

---

[7] Review of the record in the habeas case reveals that counsel, once retained, sought and obtained dismissal of the habeas action on exhaustion grounds; there was no need to defend any specific action of Sergeant Wright's on the merits. *See Punch v. Marr*, No. 6:23-cv-00012, Doc. Nos. 22, 26, 27 (S.D. Tex.).

### 2. *Plaintiff's claims against Nurse Cox, Nurse McBride, and Dr. Decloy in their individual capacities should be dismissed.*

As indicated in his response to the Court's questionnaire, Plaintiff sues two nurses who are allegedly part of the Victoria County Jail's medical staff – Nurse Cox and Nurse McBride – in their individual capacities. He claims that these defendants denied him medical care by "spreading information that my injury was pre-existing." (Doc. No. 19, p. 6-7 ¶¶ 33-34.) This information apparently prevented Plaintiff from obtaining an MRI on his shoulder when he requested one. *See id.* at 5 ¶ 25. Plaintiff also sues a Dr. Decloy in his individual capacity for "refusing to see me to have my injury assess." *Id.* at 7 ¶ 34. Plaintiff's allegations should be dismissed.

With regard to the nurses, Plaintiff fails to plausibly allege any violation of his rights. He claims that the nurses "spread information" that his shoulder injury was pre-existing, having occurred prior to his incarceration. *See* Doc. No. 19, pp. 5, 7 ¶¶ 25, 34. Plaintiff states that he received the following information via the jail's kiosk system: "During the visit in which the x-ray was ordered you informed us that your shoulder injury happened before you were detained in the Victoria County Jail." *Id.* at 5 ¶ 34. Plaintiff does not allege that this quoted statement was false, or that he did not have an existing shoulder injury at the time he was brought into the jail. Because Plaintiff does not claim that this statement was false, he fails to plausibly allege that any violation of his rights occurred when the nurses allegedly "spread" this information to jail officials.

In any event, even if the statement were false (that Plaintiff had not in fact told the nurses that his shoulder injury was pre-existing), Plaintiff's allegation is still not viable, because it amounts to nothing more than a disagreement with his medical treatment. A plaintiff must

plausibly allege something more than mere disagreement with his level of care, even if that care was arguably ineffective. *See Davidson v. Tex. Dep't of Crim. Just.*, 91 F. App'x 963, 965 (5th Cir. 2004) (citing *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999) and *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995)).  Here, Plaintiff believes he should have received an MRI, but even after his transfer to the North Texas State Hospital and his evaluation at an off-site hospital, it does not appear that any medical professional has ever made any judgment that an MRI was needed.  *See* Doc. No. 19, p. 5 ¶ 16 (Plaintiff recounts care he has received since his transfer – no MRI mentioned).  Because Plaintiff's disagreement with his medical treatment does not amount to a constitutional violation, his claim against the nurses should be dismissed.

The district court should also dismiss Plaintiff's complaint against Dr. Decloy.  Liberally construed and considering the whole of Plaintiff's submissions, Plaintiff's claim is that, although contacted by Sergeant Wright (*see* Doc. No. 19, p. 3 ¶ 17 – Sergeant Wright "informed the medical department"), Dr. Decloy did not come to the jail on that Sunday, October 8, to examine Plaintiff.  This, Plaintiff contends, amounted to a refusal to treat Plaintiff.  *See id.* at 6 ¶ 33; *id.* at 7 ¶ 34.  Plaintiff acknowledges, however, that he was seen by a medical professional for his alleged injuries and that an x-ray was performed.  *Id.* at 5 ¶ 28.  At most, Plaintiff therefore alleges a delay in his treatment, not a denial of treatment.  As noted above, Plaintiff fails to plausibly allege that he suffered substantial harm, any aggravation of his alleged injuries, or indeed any harm at all, by virtue of any delay in receiving care.  *See Rogers*, 709 F.3d at 410; *Easter*, 467 F.3d at 464.  The district court should dismiss Plaintiff's claim against Dr. Decloy.

### E. *Leave to amend, effect of Plaintiff's incompetency finding, and dismissal without prejudice.*

The undersigned recommends dismissal of Plaintiff's claims against the defendants in this case. Plaintiff has been afforded the opportunity to plead his best case against the defendants: he has submitted his complaint and has responded to the Court's questionnaire with supporting exhibits. Plaintiff's factual allegations against Sergeant Wright and the other defendants fail to present any plausible claim, and the undersigned doubts that, given the facts as currently understood, Plaintiff could amend his complaint to articulate plausible claims against those defendants.

Plaintiff is proceeding *pro se*, and ordinarily "a pro se litigant should be offered an opportunity to amend his complaint before it is dismissed." *Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2016); *Brewster v. Dretke*, 587 F.3d 764, 767-68 (5th Cir. 2009). Leave to amend is not required where amendment would be futile – that is, where an amended complaint would still fail to state a claim upon which relief may be granted. *See Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016); *Foman v. Davis*, 371 U.S. 178, 182 (1962) (futility of amendment is adequate justification to refuse to grant leave to amend). In a prisoner civil rights action, "[i]f the prisoner has filed his complaint and submitted questionnaire responses, then the court may conclude that he has pleaded his best case such that granting him further leave to amend would be futile or cause unnecessary delay." *Clark v. Waddell*, No. 7:22-cv-00059-M-BP, 2023 WL 8605313, at *18 (N.D. Tex. Nov. 15, 2023); *see also Mejia v. Monroe*, No. H-18-3036, 2021 WL 765726, at *2 (S.D. Tex. Feb. 26, 2021) (Miller, J.) (finding that inmate had pleaded his best case where he was afforded an opportunity to plead facts supporting his claim through a more definite statement).

But this memorandum and recommendation allows Plaintiff 14 days in which to explain how he would cure the deficiencies identified above and thus demonstrate to the Court why he should be granted leave to amend his claims.  *Cf. Parham v. Wayne McCollum Detention Ctr.*, No. 3:22-cv-2790-G-BN, 2023 WL 2504910, at *6 (N.D. Tex. Jan. 10, 2023), *adopted*, 2023 WL 2518853 (N.D. Tex. Mar. 14, 2023) (citing *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021) (per curiam) ("A court should freely give leave to amend when justice so requires … but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects.")).  The district court should therefore decide whether to grant leave to amend only after reviewing any objections to this memorandum and recommendation.

Where leave to amend would be futile, the dismissal of a plaintiff's case would normally be with prejudice.  In this case, however, the undersigned recommends dismissal of Plaintiff's case without prejudice.  Recall that Plaintiff was found incompetent to stand trial in his pending state criminal cases.  Under Texas law, Plaintiff's incompetency finding means that a court has determined that he does not have "sufficient present ability to consult with [his] lawyer with a reasonable degree of rational understanding" or "a rational as well as factual understanding of the proceedings against [him]."  *See* Tex. Code Crim. Proc. art. 46B.003(a)(1)-(2).  Federal Rule of Civil Procedure 17(c)(2) provides that the court "must appoint a guardian ad litem – or issue another appropriate order – to protect a minor or incompetent person who is unrepresented in an action."  Fed. R. Civ. P. 17(c)(2).  The Fifth Circuit has interpreted Rule 17(c)(2) to mean, in the context of a plaintiff pursuing civil litigation *pro se*, that

> Rule 17(c) does not make the appointment of a guardian ad litem mandatory.  If the court feels that the infant's [or incompetent person's] interests are otherwise adequately represented and protected, a guardian ad litem need not be appointed.

> But the rule does not mean that a trial judge may ignore or overlook such a fundamental requirement for the protection of infants [or incompetent persons]. We spell out the rule to mean: (1) as a matter of proper procedure, the court should usually appoint a guardian ad litem; (2) but the Court may, after weighing all the circumstances, issue such order as will protect the minor [or incompetent person] in lieu of appointment of a guardian ad litem; (3) and may even decide that such appointment is unnecessary, though only after the Court has considered the matter and made a judicial determination that the infant [or incompetent person] is protected without a guardian.

*Adelman on Behalf of Adelman v. Graves*, 747 F.2d 986, 989 (5th Cir. 1984) (quoting *Roberts v. Ohio Casualty Ins. Co.*, 256 F.2d 35, 39 (5th Cir. 1958) (emphasis deleted, bracketed text as it appears in *Adelman*).[8] Within the Fifth Circuit, at least two district court cases, citing out-of-circuit authority, have concluded that legal adjudication of incompetence, when brought to the court's attention, results in Federal Rule of Civil Procedure 17(c)(2)'s provisions being "brought into play." *Schreck v. City of Amarillo*, No. 2:21-CV-220-Z-BR, 2021 WL 5178855, at *3 (N.D. Tex. Nov. 8, 2021); *Maas v. BP Exploration & Prod., Inc.*, Civ. No. 20-335, 2020 WL 3868447, at *2 & n.5 (E.D. La. July 8, 2020) (citing *Hudnall v. Sellner*, 800 F.2d 377, 385 (4th Cir. 1986)). That said, another district court in this circuit has recognized that a state court's determination that an individual is incompetent to stand trial in his criminal proceedings does not necessarily mean that he is incompetent for purposes of Rule 17. *See Couvillion v. Lopinto*, Civ. No. 24-590, 2024 WL 2739321, at *2 (E.D. La. May 2, 2024), *adopted*, 2024 WL 2722298 (E.D. La. May 28, 2024) (citing *Spence v. Harrison-Dunn*, No. 20-20498, 2021 WL 5409240, at *1 (5th Cir. Nov. 18, 2021) (unpublished)).

---

[8] The language of Rule 17(c) as it existed in 1984 differed from the rule's current language, but not substantially. Rule 17(c) in 1984 stated, "The court *shall* appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action *or shall* make such other order as it deems proper for the protection of the infant or incompetent person." *See Adelman*, 747 F.2d at 989.

The Fifth Circuit interprets the rule's term "incompetent person" to refer to a person without the capacity to litigate under the law of the person's state of domicile. *Thomas v. Humfield,* 916 F.2d 1032, 1035 (5th Cir. 1990); *see also Hart v. Wells Fargo & Co.*, No. 3:14-CV-3796-N, 2014 WL 6901831, at *2 (N.D. Tex. Dec. 8, 2014). "In Texas, the standard is whether individuals, 'by reason of mental or bodily infirmity, [are] incapable of properly caring for their own interests in the litigation.'" *Magallon v. Livingston,* 453 F.3d 268, 271 (5th Cir. 2006) (quoting *Lindly v. Lindly,* 102 Tex. 135, 141, 113 S.W. 750 (1908)). The standard for incompetency in Texas criminal cases is worded differently, as discussed above, but the substance of the standards is similar.

A court should not reach the merits of any possibly incompetent plaintiff's actions without first appointing a suitable representative. *See Berrios v. New York City Housing Auth.*, 564 F.3d 130, 134 (2d Cir. 2009). A court may, however, dismiss an action without prejudice without appointing a guardian ad litem if it is clear that no substantial claim could be asserted on the incompetent person's behalf based on the allegations in the complaint. *See Berrios*, 564 F.3d at 135; *see also see also Powell v. Symons,* 680 F.3d 301, 307 (3d Cir. 2012) (inquiry into whether to appoint guardian ad litem for *pro se* litigant "would usually occur after the preliminary merits screening"). Indeed, this is what happened in Plaintiff's previous civil rights case. *See Punch v. Victoria Cnty. Jail Medical Dep't*, No. 6:22-cv-00022, 2023 WL 5613411 (S.D. Tex. Feb. 7, 2023), *adopted*, 2023 WL 5616177 (S.D. Tex. Aug. 29, 2023) (case dismissed without prejudice upon screening). A number of other courts, in this circuit and beyond, have also engaged in such screening. *E.g.*, *Couvillion*, 2024 WL 2739321, at *2; *William-Whitfield v. Commonwealth Lehigh Cnty. Prison*, Civ. No. 21-4544, 2022 WL 1291527, at *4 n.10 (E.D. Pa. Apr. 29, 2022); *McConnachie v. Wash. State Dep't of Soc. and Health Servs.*, No. 2:21-cv-

00181-SMJ, 2021 WLL 4484558, at *2 (E.D. Wash. Sept. 3, 2021); *Dangim v. FNU LNU, USA Law Enforcement*, No. 16-812, 2017 WL 3149359, at *3 (D.N.M. June 2, 2017); *Berry v. Daly*, No. 2:16-cv-14495, 2017 WL 410339, at *2 (E.D. Mich. Jan. 30, 2017) (dismissing *pro se* complaint without prejudice at the screening stage without appointing guardian ad litem because complaint was frivolous); *Moreno v. Perez*, No. EDCV 15-2548-CAS (JPR), 2016 WL 1000318, at *2 (C.D. Cal. Mar. 14, 2016) (dismissing complaint by incompetent plaintiff without prejudice and holding that the court "need not appoint a guardian" because it was "clear that no substantial claim can be raised on Plaintiff's behalf based on the allegations" of the complaint); *Vasquez v. New York State Office of Mental Health*, No. 9:16-CV-0320, 2016 WL 1312567, at *5 & n.5 (N.D.N.Y. Apr. 4, 2015) (same); *Mahoney v. New Hampshire*, No. 14cv431-JD, 2015 WL 3794854, at *2 (D.N.H. June 17, 2015) (same).

     Here, the undersigned previously denied Plaintiff's motion for appointment of a guardian ad litem (Doc. No. 7) without prejudice as premature because the Court was screening Plaintiff's lawsuit. *See* Doc. No. 14. Now, having reviewed Plaintiff's allegations, the undersigned recommends their dismissal without prejudice. Because dismissal is without prejudice, the undersigned recommends that the district court not appoint a guardian ad litem for Plaintiff. *See Berrios*, 564 F.3d at 134; *Berry*, 2017 WL 410339, at *2 (dismissing *pro se* complaint without prejudice at the screening stage without appointing guardian ad litem because complaint was frivolous); *Moreno*, 2016 WL 1000318, at *2 (dismissing complaint by incompetent plaintiff without prejudice and holding that the court "need not appoint a guardian because it was "clear that no substantial claim can be raised on Plaintiff's behalf based on the allegations" of the complaint); *Powell,* 680 F.3d at 307 (inquiry into whether to appoint guardian ad litem for pro se litigant "would usually occur after the preliminary merits screening").

### F. Conclusion and recommendation.

The undersigned recommends that the district court DISMISS Plaintiff's claims without prejudice.

### G. Notice.

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within 14 days after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), and General Order No. 2002-13, United States District Court for the Southern District of Texas. A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED on July 9, 2024.

*[signature]*

MITCHEL NEUROCK
United States Magistrate Judge